UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | § | CHAPTER 7 |
| | § | |
| GLENN FAVRE | § | CASE NO 08-85264-MHM |
| DEBTOR | § | |
| | § | |
| | § | |
| GLENN FAVRE pro se | § | |
| CLAIMANT/PLAINTIFF | § | THE HONORABLE MARGARET MURPHY |
| | § | |
| v. | § | |
| | § | ADVERSARIAL PROCEEDING |
| GOLDMAN SACHS, HOLDINGS, INC., et al | § | |
| | § | |
| SUNTRUST BANK | § | 09-AP-09069 |
| HOLDINGS, INC et al | § | |
| | § | |
| FIDELITY NATIONAL | § | AND |
| FINANCIAL GROUP, INC., et al | § | |
| | § | |
| SUNTRUST MORTGAGE, INC., et al | § | |
| OLD REPUBLIC NATIONAL TITLE, INC., et al | § | 09-AP-09075 |
| | § | |
| DEFENDANT | § | |

NOV 18 2009 PM03:42

M. REGINA THOMAS, CLERK
IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA
FILED

**PLAINTIFF'S MOTION FOR AN INJUNCTIVE RELIEF AGAINST THE DEFENDANTS' ATTORNEYS, MONICA GILROY ESQ., AND ALICE HUNEYCUTT ESQ., AS AGENTS' OF THE RECIPIENTS OF THE TARP FUND, FOR THEIR WILLFUL VIOLATIONS AND MALICIOUS INTENT TO HARM THE PLAINTIFF, , WITH REGARDS TO FRAUD ENFORCEMENT AND RECOVERY ACT OF 2009 ("FERA")**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THE DEFENDANTS FOR THE WILLFUL VIOLATION OF THE A DISCHARGE UNDER SECTION 727 AND THE AFFECTS OF THE DISCHARGE ORDER 11 USC § 524**

**MOTION FOR DEFAULT JUDGMENT AGAINST THE DEFENDANTS FOR FAILING TO ANSWER THE SUMMONS UNDER FED BANK R. 7012**

1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

COMES NOW GLENN FAVRE and files for a motion for Injunctive Relief, Motion for Summary Judgment and Motion for Default Judgment against the Defendants and shows this Honorable Court:

**THE DEFENDANTS HAVE VIOLATED "FERA" THE NEW**

**SECTIONS 3729(A)(1)(A), (B), (C), (G),[1]**

Case History

The defendants, through their agents, who are agents of the recipient of the TARP FUND, have submitted false claims and documents to this Honorable Court on January 20, 2009 and continue to submit to this Honorable Court, with the intent to conceal, knowingly making, used, and causes to be made and used, false records and statements material to the obligation to pay or transmit money or property to the Government, and knowingly conceals and knowingly and improperly avoids or decreases an obligation to pay, such as when found to be in violation in these adversarial hearings, would be required to pay into "The Fund" held by the United States Treasury, and the repayment of the TARP FUND.

---

[1] **The new sections 3729(a)(1)(A), (B), (C), and (G) extend liability to any person who:**

**(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;**

**(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;**

**(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);**

**[ . . . ] or**

**(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay**

2

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

To hide the identity of the defendants majority stock holder Warren Buffett, specifically by the attorney for; SunTrust bank, Holding, inc, SunTrust Mortgage, inc., Fidelity National Financial Group, and Old Republic National Title, Movant 26, Monica Gilroy, ESQ., of Dickenson Gilroy, LLC., not disclosing that she represents all the interest of all of the Defendants, during the 341 meeting of creditors, showing a willful intent to deceive this Honorable Court and that of the Trustee Gregory Hayes, by concealing the direct conflict of interest with each of the Defendants to one another, to Warren Buffett; who is a majority stock holder BERKSHIRE HATHAWAY Inc, which is the Beneficial Owner in Moody's, which is a majority holding of Old Republic National Title, Inc. Being on the Board of Directors of Goldman Sachs, SunTrust Bank Holdings, Inc., shows that Warren Buffett, along with his interest in Berkshire Hathaway, has a conflict of interest with all of the companies that represent the class "Defendants", and that of the Monica Gilroy, ESQ., and has filed motions for dismissal, claiming that SunTrust Bank Holdings, Inc is not a legal entity and that Fidelity Financial Group, Inc., is not a Party of this suite, when Fidelity Financial Group, Inc. is the sole provider of the UCC Plus Insurance Policy that insured all of the securitized loans that Moody's Credit Rating Service, Inc. grades as a "Neutral Rating", to deceive the share holder and the Government of the over valued equity per share. Traded on the Commodity Futures Trade Commission Market (CFTC) as Contract Mortgage Obligation (CMO) and Contract Debt Obligations (CDO).

The Plaintiffs primary residence was transacted identically the same way as the investment properties that the Plaintiff holds and has interest in form SunTrust Bank

3

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

Holdings, Inc., SunTrust Mortgage, Inc., Berkshire Hathaway and Goldman Sachs, Inc., and were all underwritten by Old Republic National Title, Inc and Fidelity Financial Group, Inc., proving the conflict of interest and the willful intent to deceive and conceal the facts to this Honorable Court.

**The Defendants have violated the discharge Order of the Chapter 7 Bankruptcy, section 727 11 USC 524 of the Plaintiff that this honorable Court issued on April 9, 2009**

Alice Huneycutt, ESQ., of Sterns Weaver Miller Weissler Alhadeff & Sitterson, PA. in Florida, in **an Order to Show Cause** by the Honorable James M. Barton in the 13th Circuit Civil Court of Hillsborough County, Florida, as to why SunTrust is still moving against the property of the estate, which was included disclosed and filed in the schedule of assets, which was discharged in the Order from this Honorable Court, stated to the Honorable James M. Barton that the estate was discharge under section 727 11 USC § 523 when in fact it was discharged under section 727 11 USC § 524[2].. See an

---

1(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

11 USC § 523

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

**(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—**

**(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;**

**(B) use of a statement in writing—**

**(i) that is materially false;(ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive;**

Verses

4

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

**order denying a motion for injunctive relief and summary judgment** by The Honorable Judge Margaret Murphy of the United States Bankruptcy Court Northern District of Georgia, in an attempt to deceive the Honorable Judge James M. Barton, and have him rule in favor of the Plaintiff in the matter of SunTrust Mortgage, Inc v COX LUMBER CO. d/b/a HD SUPPLY LUMBER & BUILDING MATERIALS a/k/a HD Supply – LBM Cox Lumber Co and Glenn Favre pro se, civil case number 08-CA-017979.

The Defendant's attorneys have violated 11 USC §524 by moving forward and continuing to move against the injunctive relief that arises after the discharge and are attempting to utilize the state laws under Florida and Georgia; section 454.23, Florida Statutes (2006), prohibiting the unlicensed practice of law by an individual for a corporate entity. <u>ecles v. Atlanta technology group inc.,</u> 267 Ga. 801, 803, 485 S.Ed.2d, 22, 25 (GA 1997) to continue with the law suites by naming the corporations and adding "John Does" to the case as members of the corporations, with regards to stopping the pro se litigation by amending the original complaint filed in 2008, in an effort to prevent the

---

11 USC § 524. Effect of discharge
(a) A discharge in a case under this title--
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.
2

5

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

plaintiff from pro se litigating the case in Florida. By including the corporations that were administratively dissolved in 2008 in Florida and were included and disclosed in my chapter 7 as business debt, the willful attempt to conceal or deceive the Courts with this action is yet another violation of 11 USC § 524 and FCA and FERA by the Defendants and adding yet another financial hardship to the Plaintiff.

## THE DEFENDANTS FAILED TO ANSWER THE SUMMONS ISSUED OCTOBER 16, 2009 BY THE HONORABLE COURT VIOLATING UNDER FED BANK R. 7012[3]

---

**Major FCA Amendments Expanding Liability** Under the FERA, the key liability sections of the FCA remain the provisions addressing false claims, false statements supporting false claims, conspiracy, and the reverse false claims and obligation provisions. These provisions have been renumbered as well as expanded to cover additional conduct. **The new sections 3729(a)(1)(A), (B), (C), and (G) extend liability to any person who:(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); [ . . . ] or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.**

Many of the key changes are in the definitions, found in section 3729(b). **Elimination of Allison Engine's Intent Requirement:** Under the Supreme Court's unanimous decision in Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123 (2008), FCA liability was limited to fraudulent statements that were designed "to get" false claims paid or approved "by the Government." See FraudMail Alert No. 08-06-09. See also John. T. Boese, Civil False Claims and Qui Tam Actions §2.06[G] (3d ed. 2006 & Supp. 2009-1). The Supreme Court's interpretation in Allison Engine no longer applies after the FERA because the new conspiracy section was drafted to cover only a conspiracy "to get a false claim paid or approved." Courts had properly interpreted this language to limit the conspiracy section to apply only to violations of then-subsection 3729(a)(1), and not to violations of the reverse false claim provision. Moreover, the conspiracy section required that the government pay the false claim. The new conspiracy section, **31 U.S.C. § 3729(a)(1)(C), expands the conspiracy section to include a conspiracy to commit a violation of any other substantive section of the FCA.** The amendment also eliminates the need for the false claim to be paid or approved, and assesses liability for conspiring to commit the violation. Importantly, the word "knowingly" still does not appear in the language of the new conspiracy section, so the argument remains that a common law liability, including specific intent, is still required to prove a conspiracy under the FCA.

**Liability for Overpayments:** The amended reverse false claims liability provision in section law removes both the "to get" language and the "by the Government" limitation in section 3729(a)(2)—as well as

6

comparable language in sections 3729(a)(3) and (a)(7). Further, it attempts to make those changes in section 3729(a)(1)(B) effective as of June 7, 2009—the date Allison Engine was decided, The Court in Allison Engine found that, without a clear link between a false claim and payment or approval by the government, the FCA would be "boundless" and become an "all-purpose antifraud statute." 128 S. Ct. at 2128, 2130. To replace this rational limitation, the FERA adds a new definition of "claim," and FCA liability will be limited only by requiring some sort of nexus to the government. The FCA now covers requests for funds to a contractor, grantee, or other recipient, if the money or property requested "is to be spent or used on the Government's behalf or to advance a Government program or interest." The legislation does not define the key terms "used on the Government's behalf" or "to advance a Government program or interest," and presumably courts will have to decide their meaning on a case by case basis. No one knows the scope. Are government funds invested in GM or AIG "advanc[ing] a Government program" so that a false claim to those entities will violate the FCA and be enforced by qui tam relators?[3] Recognizing that this new language is not very clear, Senator Kyle attempted to limit its scope: [p]revious understanding, as well as commons sense, dictate that a particular transaction does not "advance a Government program or interest" unless it is predominantly federal in character—something that at least would require . . . that the claim ultimately results in a loss to the government . . . [rather than] any garden-variety dispute between a general contractor and a subcontractor simply because the general receives some federal money. 155 Cong. Rec. S4540 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl). One hopes that Senator Kyle's interpretation is accepted. Future FCA case law will determine whether and to what extent Congress succeeded in overturning Allison Engine through the FERA.

**Materiality Requirement:** In addition to the nexus to the government requirement, the FERA, at long last, specifically incorporates a materiality requirement in the False Claims Act (a position the government and relators fought, without success, for over 15 years), but it defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," which is the "weaker" materiality standard that has been applied in some FCA cases. See John T. Boese, Civil False Claims and Qui Tam Actions §2.04 (Aspen Publishers) (3d ed. & Supp. 2009-2). How much of a difference will this make? That depends entirely on how literally courts will read this provision. Almost every violation or mistake is arguably "capable of influencing" a payment decision by the government, but many courts in the past have read this test as strongly limiting the application of the FCA. For example, despite applying this "weaker" materiality standard, at least two courts have held that violations of "conditions of participation" in a Federal healthcare program do not result in FCA violations. See United States ex rel. Conner v. Salina Reg'l Health Ctr., 543 F.3d 1211 (10th Cir. 2008); United States ex rel. Landers v. Baptist Mem'l Health Care Corp. 525 F. Supp. 2d 972 (W.D. Tenn. 2007). **Conspiracy:** Under the prior FCA, the 3729(a)(1)(G) quoted above extends new liability to "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." **Under this provision, there is no need for a person to have taken an affirmative act—a false statement or record—in order to conceal, avoid, or decrease the obligation to the government.** This new provision is even more dangerous because an "obligation" is specifically defined to include within the scope of FCA liability the retention of an overpayment from the government. The term "improperly" is intended to limit this liability, and would presumably exclude overpayments such as those under Medicaid that undergo a reconciliation process. Practitioners will be required, almost immediately after passage, to begin to advise clients whether they have received "overpayments" and the potential liability that could result from retention of such overpayments. Moreover, even though this provision is not retroactive, an overpayment is an overpayment, whether it occurred before or after May 20, 2009. The government and relators are almost certain to argue that this provision applies to overpayments made before the date of the legislation. **Expanded Definition of "Obligation": The definition of "obligation" that triggers reverse false claims liability is expanded to encompass "an established duty, whether or not fixed" that arises from a contractual, grantee, licensee, or fee-based relationship, from a statute or regulation, or from the retention of any overpayment. According to government statements, this is intended to overturn, among other cases, the Sixth Circuit's decision 10 years ago in United States ex rel. American Textile Manufacturers Institute, Inc. v. The Limited, Inc., 190 F.3d 729 (6th Cir. 1999) ("ATMI"), which defined**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

WHEREFORE, Plaintiff Glenn R. Favre requests this Honorable Court award the Motion for Injunctive Relief against the Defendant's attorneys from continuing to willfully violate the Civil False Claims Act.

The Plaintiff request this Honorable Court Award a SUMMARY JUDGMENT in the Plaintiff's favor for the Defendant willful violations of the Discharge Order under section 727 and show the Defendant what the actual affects of 11 USC § 524, calculated from HR 1113 for Tier 3 violations. Total fines of $1,000,000.00 per day, concurrent restitution paid through "The Fund", held by the Untied States Treasury.

The Plaintiff request that this Honorable Court enter an award for Default Judgment for failing to respond to the Order of Summons issued on October 16, 2009. For the willful intent to harm, willful violations to deceive this Honorable Court,

---

"obligation" to include only established obligations to pay money to the government. In addition to extending new liability to the retention of overpayments, this expanded definition seeks to extend liability to duties to pay fees that were not covered previously because they were not fixed in all particulars. Whether much of an expansion is actually achieved under this provision remains to be seen because even the DOJ concedes that the new language is not intended to extend FCA liability to penalties or fines. (The reader should note that the author represented many of the defendants in the ATMI case.)Effective Date: Under the effective date provision in the FERA, the FCA liability amendments would apply prospectively, with one important exception. The amendment to section 3729(a)(2)takes effect on the date that Allison Engine was decided—June 7, 2008—making that amendment retroactive. The retroactivity of this amendment will raise a host of practical problems in pending cases, and is almost certain to be challenged as unconstitutional because conduct which the Supreme Court defined as outside the scope of FCA liability is, retroactively, now a violation. Were this a normal civil statute, such retroactivity would be allowable. But the Supreme Court has already defined the FCA as an "essentially punitive" statute. Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765 (2000). Whether a clearly punitive statute can be applied retroactively is a completely different question. Additional FCA Amendments, In addition to amending the FCA's liability provisions, the FERA includes four other amendments that make recoveries and investigations under the FCA easier. These amendments are as follows: **Retaliation:** The prohibition against retaliation is expanded to include a "contractor, or agent," in addition to an employee—without requiring prohibited retaliatory acts to be taken by an "employer." Under this unusually broad definition, a retaliation action could be based on many different types of relationships that do not involve an employment contract, which could lead to\ unintended consequences.

3

8

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

knowingly presenting and making false and fraudulent claims, in an attempt to receive the approval of this court to rule in their favor, in direct violation of the "Fraud Enforcement Act" (FERA), knowingly presented false record and made false statements, material to the Plaintiff's claim that the Defendant willfully violated this courts order in an attempt to resolve the fraudulent claims made by the Defendants; conspired collectively to commit the violations, as described in subparagraph (A), (B), (D), (E), (F), and (G) and knowingly made, used, and causes to be made and used, a false record and statements material to an obligation to pay or transmit money or property to the Government, and knowingly conceals and knowingly and improperly avoids in an attempt to decreases an obligation to pay or transmit money or property to the Government.

Restitution will be calculated at 1% of each of the Defendants net Worth per property that Plaintiff is a member of, to prove the Willful Violations of FCA, FERA, for the Unfair and Deceptive Pattern, Practice and Trade with the intent to harm and further asks that this Court award the Plaintiff all of his costs and any further relief which this Court deems just and proper.

9

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

\_\_\_11·18·2009\_\_\_                          \_\_\_\[signature\]\_\_\_

Respectively Submitted                Glenn Favre pro se
                                      110 South Columbia Drive #11
                                      Decatur, Georgia 30030
                                      404-373-1137

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I Glenn R. Favre, am over the age of 18 years old at the time of this service, that a true and correct copy of the foregoing has been furnished by

U.S. Mail with the correct postage and faxed to:

MONICA GILROY OF DICKENSON GILROY, LLC
CORPORATE COUNSEL:
SUNTRUST BANK, HOLDINGS, INC.
SUNTRUST MORTGAGE, INC.
FIDELITY NATIONAL FINANCIAL GROUP, INC.
OLD REPUBLIC NATIONAL TITLE, INC
3780 MANSELL ROAD SUITE 140
ALPHARETTA GA 30022

Alice R. Huneycutt , Esquire, STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.,
SUNTRUST MORTGAGE, INC,
SUNTRUST Financial Centre, Suite 2200
401 E. Jackson Street, P. O. Box 3299, Tampa,
FL 33601, and by facsimile to (813) 222-5089,

CHARLES K. MCKNIGHT, JR.
NATIONS, TOMAN & MCKNIGHT, LLP
1230 PEACHTREE STREET, NE
SUITE 2050
ATLANTA, GA 30309
404-266-2366
FAX : 404-266-2323
EMAIL: CMCKNIGHT@NTMLAW.COM
*LEAD ATTORNEY* THIS